UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN KEOVONGXAY,<br><br>　　　　Petitioner,<br><br>　v.<br><br>W.L. MUNIZ, Warden,<br><br>　　　　Respondent. | No. 2:15-cv-00156 JAM AC<br><br>FINDINGS AND RECOMMENDATIONS |

Petitioner is a California state prisoner proceeding pro se with an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The action proceeds on the petition filed on January 29, 2015,[1] ECF No. 1, which challenges petitioner's 2011 conviction for kidnaping, residential robbery, and related offenses. Respondent has answered, ECF No. 11, and the time for filing a reply has long since passed.

## BACKGROUND

I. <u>Proceedings In the Trial Court</u>

　A. <u>Preliminary Proceedings</u>

Petitioner and two co-defendants, Joseph Hernandez and Nicholas Castaneda, were

---

[1] Because the timeliness of the petition is not disputed, the court does not consider application of the "prison mailbox rule." See <u>Houston v. Lack</u>, 487 U.S. 266 (1988) (establishing rule that a prisoner's court document is deemed filed on the date the prisoner delivered the document to prison officials for mailing).

1

charged in San Joaquin County in September 2010. The first three counts charged all three defendants as follows: Count I, kidnaping to commit robbery (Cal. Penal Code § 209(b)); Count II, first degree residential robbery in concert (Cal. Penal Code § 213(a)(1)(A)); Count III, first degree residential burglary (Cal. Penal Code § 459). The following three counts charged petitioner alone as follows: Count IV, kidnaping to commit robbery (Cal. Penal Code § 209(b)); Count V, first degree residential robbery (Cal. Penal Code § 211); and Count VI, false imprisonment by violence (Cal. Penal Code § 236).

It was alleged in relation to Counts I through V that petitioner personally used a firearm. That allegation was amended mid-trial as to Count III only, to allege as to petitioner that a principal was armed with a firearm. Past convictions and prison terms were also alleged.[2]

Trial began on December 6, 2010.

B. The Evidence Presented At Trial

In sum, the trial testimony established the following:

On July 29, 2010, petitioner and Hernandez confronted a woman and her son outside their home in Stockton. Petitioner pointed a gun at the woman while Hernandez ordered the victims inside. They demanded money and took a laptop. Police approached as the two were fleeing. Hernandez was caught nearby. Castaneda, the getaway car driver, was also promptly apprehended. These facts supported the charges in Counts I through III.

Petitioner hid in the backyard of a neighboring house, where he was discovered by the resident. Petitioner ordered the man into the house, and demanded his car keys. The man was able to get into his garage and call the police. Petitioner was gone by the time police arrived, but was arrested the next day. These facts supported the charges in Counts IV through VI.[3]

C. Outcome

On January 4, 2011, the jury found petitioner guilty on Counts II (first degree residential robbery in concert), III (first degree residential burglary), V (first degree residential robbery) and

---

[2] Petitioner's codefendants also faced various enhancements and charged priors.
[3] The evidence relevant to Count IV, which is the subject of petitioner's sole claim for relief, is set forth more fully below.

VI (false imprisonment by violence), and not guilty on Count I (kidnaping to commit robbery). On Count IV, the jury found petitioner not guilty of kidnaping to commit robbery, but guilty of the lesser included offense of simple kidnaping. The jury found the firearm allegations to be true, and determined that the residences were inhabited. On January 18, 2011, the court held a court trial on the prior allegations and found them all true.

On February 28, 2011, petitioner was sentenced to a total prison term of thirty-six years eight months.

II. Post-Conviction Proceedings

Petitioner timely appealed, and the California Court of Appeal affirmed the judgment of conviction on April 22, 2014. Lodged Doc. 16. The California Supreme Court denied review on July 9, 2014. Lodged Doc. 18.

Petitioner filed no applications for state collateral relief.

STANDARDS GOVERNING HABEAS RELIEF UNDER THE AEDPA

28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), provides in relevant part as follows:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The statute applies whenever the state court has denied a federal claim on its merits, whether or not the state court explained its reasons. Harrington v. Richter, 131 S. Ct. 770, 785 (2011). State court rejection of a federal claim will be presumed to have been on the merits absent any indication or state-law procedural principles to the contrary. Id. at 784-785 (citing Harris v. Reed, 489 U.S. 255, 265 (1989) (presumption of a merits determination when it is unclear whether a decision appearing to rest on federal grounds was decided on another basis)).

"The presumption may be overcome when there is reason to think some other explanation for the state court's decision is more likely." Id. at 785.

The phrase "clearly established Federal law" in § 2254(d)(1) refers to the "governing legal principle or principles" previously articulated by the Supreme Court. Lockyer v. Andrade, 538 U.S. 63, 71-72 (2003). Only Supreme Court precedent may constitute "clearly established Federal law," but courts may look to circuit law "to ascertain whether…the particular point in issue is clearly established by Supreme Court precedent." Marshall v. Rodgers, 133 S. Ct. 1446, 1450 (2013).

A state court decision is "contrary to" clearly established federal law if the decision "contradicts the governing law set forth in [the Supreme Court's] cases." Williams v. Taylor, 529 U.S. 362, 405 (2000). A state court decision "unreasonably applies" federal law "if the state court identifies the correct rule from [the Supreme Court's] cases but unreasonably applies it to the facts of the particular state prisoner's case." Id. at 407-08. It is not enough that the state court was incorrect in the view of the federal habeas court; the state court decision must be objectively unreasonable. Wiggins v. Smith, 539 U.S. 510, 520-21 (2003).

Review under § 2254(d) is limited to the record that was before the state court. Cullen v. Pinholster, 131 S. Ct. 1388, 1398 (2011). The question at this stage is whether the state court reasonably applied clearly established federal law to the facts before it. Id. In other words, the focus of the § 2254(d) inquiry is "on what a state court knew and did." Id. at 1399. Where the state court's adjudication is set forth in a reasoned opinion, §2254(d)(1) review is confined to "the state court's actual reasoning" and "actual analysis." Frantz v. Hazey, 533 F.3d 724, 738 (9th Cir. 2008) (en banc). A different rule applies where the state court rejects claims summarily, without a reasoned opinion. In Richter, supra, the Supreme Court held that when a state court denies a claim on the merits but without a reasoned opinion, the federal habeas court must determine what arguments or theories may have supported the state court's decision, and subject those arguments or theories to § 2254(d) scrutiny. Richter, 131 S. Ct. at 786.

////

////

DISCUSSION

I.  Petitioner's Allegations and Pertinent State Court Record

Petitioner's sole claim is that the verdict on Count IV, finding him guilty of the lesser included offense of simple kidnaping, is supported by insufficient evidence to satisfy due process. ECF No. 1 at 5, 16-26. Specifically, petitioner contends that there was not sufficient evidence to support the element of "asportation" (movement) of the victim. Id.

Count IV was based on petitioner's actions in relation to victim Pedro Medina, to whose backyard he fled after the first residential robbery. Medina testified that on July 29, 2010, he was coming out from his garage toward the alleyway adjacent to his home in Stockton, when petitioner jumped the fence into his yard. RT 171-72. Medina stated:

> When I heard the noise from that gate you can see there [in the photograph] . . . he was right there with a weapon in his hand and he was looking towards the area of the tree. And I was coming from the garage when I heard the noise. And I said, "Hey, what are you doing?"
>
> And then he came at me and he says, go inside your house. And give me the keys – and give me the keys to your cars. . . .

RT 173-74.

As petitioner gave the order to move, he was waving his handgun from side to side but not aiming it at Medina. RT 176. Petitioner used the gun to indicate where he wanted Medina to go. RT 176, 178. Medina went into the house with petitioner. Id. He followed petitioner's instructions because petitioner was armed. RT 177. He was very scared, because his daughter-in-law and grandchild were in the house. RT 178. As he was going in, Medina yelled to his daughter-in-law to lock herself into her bedroom. RT 176, 180. Inside, petitioner grabbed a set of keys that were near the entrance. While petitioner was going through the keys, Medina took off to the garage to call the police. RT 177. Keys were later discovered to be missing.

The distance that Medina moved with petitioner from the outside to the inside of the house was approximately six feet. RT 177. The outside area where he initially encountered petitioner was a private backyard, not visible to passersby. RT 177-78.

////

5

II. The Clearly Established Federal Law

Due process requires that each essential element of a criminal offense be proven beyond a reasonable doubt. United States v. Winship, 397 U.S. 358, 364 (1970). In reviewing the sufficiency of evidence to support a conviction, the question is "whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1974). If the evidence supports conflicting inferences, the reviewing court must presume "that the trier of fact resolved any such conflicts in favor of the prosecution," and the court must "defer to that resolution." Id. at 326.

III. The State Court's Ruling

This claim was raised on direct appeal. Because the California Supreme Court denied discretionary review, the opinion of the California Court of Appeal constitutes the last reasoned decision on the merits and is the subject of habeas review in this court. See Ylst v. Nunnemaker, 501 U.S. 797 (1991); Ortiz v. Yates, 704 F.3d 1026, 1034 (9th Cir. 2012).

The state court ruled as follows:

> **Sufficiency of the Evidence of Simple Kidnapping**
>
> Keovongxay claims no substantial evidence supports the kidnapping count, because as a matter of law he did not move the victim sufficiently.
>
> In assessing this claim, "We review the whole record in a light most favorable to the judgment to determine whether it contains substantial evidence, i.e., evidence that is credible and of solid value, from which a rational trier of fact could find beyond a reasonable doubt that the accused committed the offense." (In re Ryan D. (2002) 100 Cal.App.4th 854, 859; see People v. Barnes (1986) 42 Cal.3d 284, 303-304.)
>
> Keovongxay jumped over the kidnapping victim's fence and hid in his backyard. When the victim confronted him, Keovongxay, who was visibly armed, ordered the victim into his house and demanded his car keys. The victim walked "[a]bout six feet" to get into his house, and as he entered, he yelled to his daughter-in-law to "lock herself in," whereupon Keovongxay grabbed the victim's keys. The victim then ran to his detached garage and called the police. Although the victim's side yard had a metal fence along the alley, there was a solid wooden fence between the alley and his "private backyard," and a passerby would not have seen the victim in the backyard. While the victim was outside, he could hear "a lot" of

police sirens, and after defendant fled, the victim saw police cars in the street.

Keovongxay was charged with kidnapping for purposes of robbery ("aggravated" kidnapping), but was acquitted of that charge and was found guilty of the lesser offense of simple kidnapping. (§§ 207, subd. (a), 209, subd. (b).)

Simple kidnapping is defined as follows: "Every person who forcibly, or by any other means of instilling fear, steals or takes, or holds, detains, or arrests any person in this state, and carries the person into another country, state, or county, or into another part of the same county, is guilty of kidnapping." (§ 207, subd. (a).)

One element of kidnapping is "asportation," which originally required moving the victim outside the jurisdiction, and later at least to "another part" of the county. (See Fricke, Cal. Criminal Law (10th rev. ed. 1970) Kidnapping, p. 207; 1 Witkin & Epstein, Cal. Criminal Law (4th ed. 2012) Crimes Against the Person, §§ 283-285, pp. 1111-1117.) The amount of movement required has changed over a long history not necessary to recount here.

Aggravated kidnapping, that is, kidnapping to commit some other crime, such as robbery, "requires movement of the victim that is not merely incidental to the commission of the robbery, and which substantially increases the risk of harm over and above that necessarily present in the crime of robbery itself." (People v. Rayford (1994) 9 Cal.4th 1, 12.) This requires considering "the 'scope and nature' of the movement," and "the context of the environment in which the movement occurred." (Ibid.)

In People v. Martinez (1999) 20 Cal.4th 225, our Supreme Court expanded the asportation element as applicable to simple kidnapping, as follows:

"In cases involving simple kidnapping, the instructions currently provide that the victim must have been moved 'for a substantial distance, that is, a distance more than slight or trivial.' [Citation.] [W]e conclude it would also be proper for the court to instruct that, in determining whether the movement is '"substantial in character"' [citation], the jury should consider the totality of the circumstances. Thus, in a case where the evidence permitted, the jury might properly consider not only the actual distance the victim is moved, but also such factors as whether that movement increased the risk of harm above that which existed prior to the asportation, decreased the likelihood of detection, and increased both the danger inherent in a victim's foreseeable attempts to escape and the attacker's enhanced opportunity to commit additional crimes. [Fn. omitted.]

"While the jury may consider a victim's increased risk of harm, it may convict of simple kidnapping without finding an increase in harm, or any other contextual factors. Instead, as before, the jury need only find that the victim was moved a distance that was 'substantial in character.' [Citations.] To permit consideration of 'the totality of the circumstances' is intended simply to direct

7

attention to the evidence presented in the case, rather than to abstract concepts of distance. At the same time, we emphasize that contextual factors, whether singly or in combination, will not suffice to establish asportation if the movement is only a very short distance." (People v. Martinez, supra, 20 Cal.4th at p. 237.)

The jury in this case was given a version of the pattern instruction (CALCRIM No. 1215) in relevant part providing as follows: "[S]ubstantial distance means more than a slight or trivial distance. In deciding whether the distance was substantial, you must consider all the circumstances relating to the movement. Thus, in addition to considering the actual distance moved, you may also consider other factors, such as whether the movement increased the risk of physical or psychological harm, increased the danger of foreseeable escape attempt, gave the attacker a greater opportunity to commit additional crimes, or decreased the likelihood of detection."

In People v. Arias (2011) 193 Cal.App.4th 1428 (Arias), Arias forced victim Luna at gunpoint to walk 15 feet into Luna's apartment so Arias could determine if rival gang members were present. (Id. at p. 1431.) Arias rejected the claim that this movement was too insubstantial to support a simple kidnapping charge:

"A rational trier of fact could have concluded defendant was on a mission to locate and shoot a TMC gang member and, in an effort to do so, he pointed a gun at Luna, and followed him to the apartment to search for TMC gang members. Luna testified he did not want defendant to enter his apartment but was 'scared' and 'just following [defendant's] directions.' A rational trier of fact could have concluded that Luna was involuntarily moved 15 feet to the inside of his apartment in order to allow defendant to facilitate his search for TMC gang members.

"The movement of Luna increased his risk of harm in that he was moved from a public area to the seclusion of his apartment. Similarly, by scaring Luna into moving away from a public place, it was less likely defendant would have been detected if he had committed an additional crime. These factors support the asportation requirement for kidnapping." (Arias, supra, 193 Cal.App.4th at p. 1435.)

Even in cases of aggravated kidnapping, a short distance may suffice if the movement significantly changed "'the context of the environment.'" (See People v. Diaz (2000) 78 Cal.App.4th 243, 247-248.) In this case of simple kidnapping, the victim was forced from his backyard into his home, increasing the risk of harm by defendant, and decreasing the victim's freedom of movement, his opportunity for escape, and the chance he or defendant would be overheard by passersby. That suffices. (See Arias, supra, 193 Cal.App.4th at p. 1435; see also People v. Shadden (2001) 93 Cal.App.4th 164, 168-170 [victim dragged nine feet into a room in the back of a store; asportation requirement of aggravated kidnapping met, in part because "Shadden placed [the victim] out of public view. This made it less likely for others to discover the crime and decreased the odds of detection"]; People v. Smith (1995) 33

> Cal.App.4th 1586, 1594-1595 [movement of victim "40 to 50 feet from a driveway, which was open to street view, to the interior of a camper" not incidental to rape].)
>
> Contrary to Keovongxay's view, the fortuitous fact the victim was able to escape to his garage while defendant was distracted does not mean his movement into the house did not increase the risk of danger to him. Nor does the fact that the victim's backyard was "private" mean that he was equally at risk whether he was in the backyard or inside the home, as defendant contends. Those were arguments for the jury to consider in drawing inference from the facts, but the jury could rationally conclude, as it had been instructed, that defendant's forcible movement of the victim did increase the risk of harm to the victim, reduced his chance to escape, and exposed him to the risk of additional victimization by defendant.
>
> Keovongxay relies in part on People v. Hoard (2002) 103 Cal.App.4th 599, but that case is inapposite. Unlike this case, Hoard involved a conviction for aggravated kidnapping and a defendant who moved the victims within the interior of a store. (Cf. People v. Corcoran (2006) 143 Cal.App.4th 272, 279-280 [distinguishing Hoard].)
>
> Nor are we persuaded by defendant's reliance on People v. Williams (1970) 2 Cal.3d 894, where the victim was moved around a service station and its adjacent outdoor area and the People made no claim that this movement increased the victim's risk of harm. (Id. at pp. 899-900, 902-903; see also People v. Daly (1992) 8 Cal.App.4th 47, 57 [moving victim about 40 feet within a parking structure did not increase her risk of harm].) In this case, the jury could rationally find that moving the victim from his backyard into the more confined environment of his house increased the risk of harm to him and decreased the chance defendant would be detected by police audibly converging on the area, whether or not the victim's backyard was visible to the public.
>
> Accordingly, substantial evidence supports the simple kidnapping conviction.

Lodged Doc. 16 at 8-10.

IV. <u>Objective Reasonableness Under § 2254(d)</u>

Sufficiency of the evidence claims raised in habeas proceedings are reviewed "with explicit reference to the substantive elements of the criminal offense as defined by state law." Jackson, 443 U.S. at 324, n.16; Chein v. Shumsky, 373 F.3d 978, 983 (9th Cir. 2004). In determining whether sufficient evidence supports a conviction, a federal court is bound by "a state court's interpretation of state law." Bradshaw v. Richey, 546 U.S. 74, 76 (2005). Accordingly, this court accepts as it must the California Court of Appeal's definition of

9

asportation in the above-quoted passage, and its recitation of the pertinent standards under state law. Federal habeas relief is available only if it was objectively unreasonable of the state court to conclude that a rational juror could have found beyond a reasonable doubt that the victim was moved a "significant distance," meaning a distance that was itself "more than trivial" or that was "significant" in light of contextual factors including an increased risk of harm. See People v. Martinez, 20 Cal. 4th 225, 237 (1999) (elements of California simple kidnaping); see also Juan H. v. Allen, 408 F.3d 1262, 1274 (9th Cir. 2005) (in order to grant a writ of habeas corpus under AEDPA, the court must find that the decision of the state court reflected an objectively unreasonable application of Jackson and Winship to the facts of the case).

The state court did not unreasonably apply clearly established federal law. It applied the standard required by Jackson and Winship, supra,[4] and it did so reasonably. Specifically, it was not objectively unreasonable to conclude that the evidence permitted a conclusion that Pedro Medina was moved a "significant distance" under petitioner's control. Although six feet may be a relatively short distance, it is not a trivial distance when considered in context. Moreover, the significance of the distance is supported by the fact that it involved movement from the outside of the house to the inside. A rational juror could conclude that moving indoors increased the risk of harm to the victim, reduced his chance to escape, and exposed him to the risk of additional victimization by petitioner. These inferences are not rendered irrational by the fact that Mr. Medina was lucky enough to escape to the detached garage. Neither are they defeated by the fact that the backyard could not be directly viewed by passersby. A rational juror could conclude, for example, that cries for help are less likely to be heard by passersby if they come from inside a house.

Petitioner's arguments all go to the strength of competing inferences to be drawn from the evidence. In habeas, if the evidence supports conflicting inferences, the reviewing court must presume "that the trier of fact resolved any such conflicts in favor of the prosecution," and the court must "defer to that resolution." Jackson, 443 U.S. at 326 (pre-AEDPA standard); see also

---

[4] See Lodged Doc. 16 at 8 (quoting In re Ryan D., 100 Cal. App. 4th 854, 859 (2002)).

Juan H., 408 F.3d at 1274, 1275 & n. 13 (AEDPA standard). It may be true that the jury in petitioner's case could have drawn different inferences, but that does not render the verdict unconstitutional. The inferences that were presumably drawn in favor of the prosecution here are rationally supported by evidence, and therefore may not be disturbed.

## CONCLUSION

For all the reasons explained above, the state court's denial of petitioner's claims was not objectively unreasonable within the meaning of 28 U.S.C. § 2254(d). Even without reference to AEDPA standards, petitioner has not established any violation of his constitutional rights. Accordingly, IT IS HEREBY RECOMMENDED that the petition for writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. §636(b)(l). Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." If petitioner files objections, he shall also address whether a certificate of appealability should issue and, if so, why and as to which issues. See 28 U.S.C. § 2253(c)(2). Any reply to the objections shall be served and filed within fourteen days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: August 15, 2017

*/s/ Allison Claire*
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE